Hugh ISAAC, Evelyn Isaac and Hugh Isaac, as next friend of Tomekia Isaac, Plaintiffs,

v.

LIFE INVESTORS INSURANCE COMPANY OF AMERICA, Earl Moats, Paul Jowers, Nicholas W. Humble, A–Z, Whose Identities Are Unknown To The Plaintiffs At This Time But Who Will Be Added As Defendants As Their Identities Are Ascertained, and Johnny White, Defendants.

No. CIV–1–89–592.

United States District Court, E.D. Tennessee, S.D.

Aug. 31, 1990.

W. Cameron Parsons, Parsons & Hall, Tuscaloosa, Ala., Jerry H. Summers, Summers, McRae & Wyatt, Chattanooga, Tenn., for plaintiffs.

Charles W. Dooley, Leitner, Warner, Moffitt, Williams, Dooley, Carpenter & Napolitan, Chattanooga, Tenn., for Life Investors.

Kenneth R. Starr, Luther, Anderson, Cleary & Ruth, Chattanooga, Tenn., for Nicholas Humble.

## MEMORANDUM

EDGAR, District Judge.

This matter is before the Court upon the motion of defendant Life Investors Insurance Company of America ("Life Investors") to dismiss and the motion of defendant Nicholas W. Humble ("Humble") to dismiss. For the reasons set forth herein, the motions will be GRANTED IN PART and DENIED IN PART.

The plaintiffs in this action are a minor child and her parents. The parents brought suit on their own behalf and on behalf of their daughter in a four count complaint filed in Alabama state court. The defendants removed this action to the United States District Court, Northern District of Alabama, Western Division, based not only on diversity of citizenship, but also federal question, asserting federal preemption under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.* ("ERISA"). The case was subsequently transferred to this Court pursuant to 28 U.S.C. § 1404(a). *See* Court File Nos. 3, 8 and 25. The plaintiffs seek both compensatory and punitive damages from the defendants incurred as a result of misrepresentation and fraud. The plaintiffs claim that the defendants, either individually or through agents, fraudulently induced them to terminate their prior health insurance, which covered the medical expenses associated with their daughter's scoliosis, and enroll in a health insurance plan offered to the plaintiffs through Hugh Isaac's employer, Vanco, Inc. The plaintiffs claim that the defendants, either individually or through agents, misrepresented that the policy offered through Life Investors would provide for medical expenses incurred by the daughter's scoliosis. Instead, the plaintiffs claim that Life Investors has denied the claim, except for

$500.00, listing the child's preexisting condition as the reason.

The defendants in this action have filed motions to dismiss on various grounds. Defendant Life Investors argues (1) counts one, two and three of the complaint, by their terms, do not apply to it, (2) no private right of action exists for an alleged violation of Ala.Code Ann. § 27–12–6, and (3) ERISA preempts any and all claims set forth in the complaint. Defendant Humble likewise asserts arguments based upon no private right of action under Ala.Code Ann. § 27–12–6 and ERISA preemption.

Since this action was properly removed to federal court based upon diversity of citizenship, this Court need not address whether raising federal preemption under ERISA alone would be a sufficient basis for removal.

The issues before the Court, however, are multi-fold: (1) which causes of action are asserted against which defendants; (2) do all of the Alabama statutes cited by the plaintiffs even provide for a private right of action; (3) if so, are those causes of action then preempted under ERISA as "relat[ing] to" an ERISA plan (29 U.S.C. § 1144(a)); and (4) in determining the ERISA preemption issue, does this Court apply Eleventh or Sixth Circuit precedent?

## 1. Cause of Action

In counts one, two and three of the amended complaint (Court File No. 53), the plaintiffs allege intentional misrepresentation, reckless misrepresentation and negligent misrepresentation. The plaintiffs claim these misrepresentations were made by defendant Earl Moats. These counts do not expressly refer to defendant Life Investors. In the beginning of the complaint, however, the plaintiffs allege that Earl Moats was and is Life Investor's enrolling agent and "was acting as agent and/or employee of the [other defendants]." As a general rule, an agent and/or employee of a corporation may bind the corporation by his acts and declarations made while acting within the scope of his authority as an agent, or within the scope

of his duties as an employee. *See Potomac Leasing Co. v. Bulger,* 531 So.2d 307 (Ala. 1988). (Any misrepresentation of an agent may be imputed to his principal.) Counts one, two and three, by their terms, do apply to Life Investors. On that issue, therefore, Life Investor's motion to dismiss will be DENIED.

### 2. Private Right of Action

██ In the present case, the plaintiffs allege in each count of their complaint that the defendants violated Alabama statutory law, in that they misrepresented the coverage provisions of the ERISA plan provided by Life Investors through Hugh Isaac's employer, thereby inducing them to terminate their old health insurance and enroll in the ERISA plan. The two provisions alleged to have been violated by the defendants are:

> Misrepresentations of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party, constitute legal fraud.

Ala.Code Ann. § 6–5–101 (1975).

> Fraud by one, accompanied with damage to the party defrauded, in all cases gives a right of action.

Ala.Code Ann. § 6–5–100 (1975).

> No person shall make or issue, or cause to be made or issued, any written or oral statement misrepresenting or making misleading incomplete comparisons as to the terms, conditions or benefits contained in any policy for the purpose of inducing, or attempting or intending to induce, the policy holder to lapse, forfeit, surrender, retain, exchange or convert any insurance policy.

Ala.Code Ann. § 27–12–6 (1977) (Alabama "twisting" statute).

Alabama's "twisting" statute, Ala.Code Ann. § 27–12–6 (1977), has been expressly held not to create a private cause of action. *Farlow v. Union Central Life Ins. Co.,* 874 F.2d 791, 794–96 (11th Cir.1989). The defendants' motions to dismiss plaintiffs' claims based on this statute as set out in count four of their complaint will, there-fore, be GRANTED. The plaintiffs, how-ever, do state claims based upon the more general fraud statute, Ala.Code Ann. §§ 6–5–100 *et seq.* (1975), which expressly provides for a private right of action. The Court, therefore, must determine whether ERISA preempts these state law claims.

### 3. ERISA Preemption

ERISA was meant to create a uniquely federal framework dealing with employee pension and benefit plans. *Alessi v. Raybestos–Manhattan, Inc.,* 451 U.S. 504, 523, 101 S.Ct. 1895, 1906, 68 L.Ed.2d 402 (1980); *Dependahl v. Falstaff Brewing Corp.,* 653 F.2d 1208, 1215 (8th Cir.1981), *cert. denied,* 454 U.S. 968, 102 S.Ct. 512, 70 L.Ed.2d 384 and 454 U.S. 1084, 102 S.Ct. 641, 70 L.Ed.2d 619 (1981). ERISA impos-es a variety of substantive requirements relating to participation, funding and vest-ing upon pension and benefit plans. *Alessi,* 451 U.S. at 525, 101 S.Ct. at 1907; *Dependahl,* 653 F.2d at 1215. It provides a comprehensive framework governing the administration of private employee pension and benefit plans. *Id.* It also establishes various uniform procedural standards con-cerning reporting, disclosure and fiduciary responsibility for both pension and benefit plans. 29 U.S.C. §§ 1021 *et seq.* It does not, however, regulate the substantive con-tent of these plans. *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 732, 105 S.Ct. 2380, 2385, 85 L.Ed.2d 728 (1985). ERISA thus contains almost no federal regulation of the actual terms of benefit plans. To bolster the federal regu-lation of these plans, Congress provided a broad exemption clause negating almost all common law causes of action. The pre-emption provision declares:

> Except as provided in subsection (b) of this section, the provisions of this sub-chapter and subchapter III of this chap-ter shall supersede any and all State laws insofar as they may now or hereaf-ter *relate to* any employee benefit plan described in section 1003(a) of this title and non-exempt under section 1003(b) of this title.

§ 514(a) of ERISA, 29 U.S.C. § 1144(a) (emphasis added).

The preemption statute is to be given a broad interpretation to effectuate the purposes of the overall ERISA framework:

> To interpret section 514(a) to preempt only state laws specifically designed to affect employee benefit plans would be to ignore the remainder of section 514. It would have been unnecessary to exempt generally applicable state criminal statutes from pre-exemption in section 514(b), for example, if section 514(a) applied only to state laws dealing specifically with ERISA plans.

*Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 98, 103 S.Ct. 2890, 2900–01, 77 L.Ed.2d 490 (1983). The *Shaw* court further held that:

> Nor, given the legislative history, can section 514(a) be interpreted to preempt only state laws dealing with the subject matters covered by ERISA [such as reporting, disclosure and fiduciary responsibility].

*Id.* Courts have found this broad preemption under section 514(a) because ERISA provides a "full range of legal and equitable remedies." *Authier v. Ginsberg,* 757 F.2d 796, 802 (6th Cir.), *cert. denied,* 474 U.S. 888, 106 S.Ct. 208, 88 L.Ed.2d 177 (1985).

In order to find preemption, therefore, a court must find that a state law cause of action "relate[s] to" an ERISA plan. The Supreme Court declared that a law would "relate to" an employee benefit plan in those circumstances where "it has a connection with or reference to such a plan." *Id.* 463 U.S. at 96–97, 103 S.Ct. at 2899–2900. The Supreme Court further illuminated the extent of federal preemption when it stated:

> ERISA makes clear that even indirect state action bearing on private pensions may encroach on the area of exclusive federal concern.... ERISA's authors clearly meant to preclude the States from avoiding through form the substance of the pre-emption provision.

*Alessi,* 451 U.S. at 525, 101 S.Ct. at 1907. The relevant inquiry, then, turns not on the purpose of a state law cause of action, but rather, its relation to an ERISA plan. *Authier,* 757 F.2d at 800. Only where a state statute does not impact on "the structure, the administration or the type of benefit provided by an ERISA plan will the state statute not be invalidated." *Coleman v. General Elec. Co.,* 643 F.Supp. 1229, 1233 (E.D.Tenn.), *aff'd,* 822 F.2d 59 (6th Cir. 1987); *See Gilbert v. Burlington Industries, Inc.,* 765 F.2d 320, 322 (2d Cir.1985), *aff'd,* 477 U.S. 901, 106 S.Ct. 3267, 91 L.Ed.2d 558 (1986). A general rule in evaluating the application of a preemption statute is that incidental economic impact on a plan does not require the invalidation of a state statute. *Gilbert,* 765 F.2d at 327. Yet, the clear weight of authority is aligned with the conclusion of the Ninth Circuit which declared:

> [E]RISA's broad preemption clause ... together with its exclusive jurisdiction provision ... has eliminated state court jurisdiction over actions related to most employee benefit plans.

*Kuntz v. Reese,* 760 F.2d 926, 933 (9th Cir.1985), *vacated on other grounds,* 785 F.2d 1410 (9th Cir.1986). To avoid preemption, a state statute or action must be an exercise of a traditional police power and, in addition, must only affect an ERISA-covered plan in a "tenuous" manner. *Gilbert,* 765 F.2d at 327.

Courts have found preemption in a variety of cases: where a disability law required sick-leave provisions in a contract to that provided by an ERISA-covered plan, *Shaw,* 463 U.S. 85, 103 S.Ct. 2890; where a state statute affected the calculation of worker's compensation benefits, *Alessi,* 451 U.S. 504, 101 S.Ct. 1895; where state law mandated a severance pay policy, *Gilbert,* 765 F.2d 320. Preemption has not been found only in those circumstances where state action was termed incidental to the operation of a plan. Thus, courts have permitted execution in a divorce suit against retirement income, *AT & T Co. v. Merry,* 592 F.2d 118 (2d Cir.1979); marital property divisions affecting retirement benefits as a result of the divorce decree, *Savings and Profit Sharing Fund of Sears Employees v. Gago,* 717 F.2d 1038 (7th Cir.1983); the

application of a mandated benefits statute relating to insurance, *see Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985) (Insurance and its regulation is one of the excepted categories under 29 U.S.C. § 1144(b)(2)(B)). However, courts have given a wide reading to the preemption statute in order to make regulation of pension and benefit plans an exclusive federal concern. *Dependahl*, 653 F.2d at 1215.

The Eleventh Circuit Court of Appeals has stated:

> Recognizing that ERISA can preempt general state common law causes of action, the problem becomes determining when a party's use of such a state law "relates to" an ERISA benefit plan. According to our recent decisions, a state law cause of action "relates to" an employee benefit plan if the employer's conduct giving rise to such claim was not "wholly remote in content" from the benefit plan. [ ] A claim does not, however, relate to a plan even though the employer's conduct occurred contemporaneously with an alleged ERISA violation, unless the facts relating to the employee's failure to receive benefits are relevant to the state law claim....

*Farlow v. Union Central Life Ins. Co.*, 874 F.2d 791, 794 (11th Cir.1989).

The present case is factually similar to a recent decision by the Eleventh Circuit, *Farlow v. Union Central Life Ins. Co.*, 874 F.2d 791 (11th Cir.1989). In *Farlow*, the plaintiffs filed suit against the underwriter of an ERISA plan and the insurance brokerage company and its employee who solicited the plaintiffs' enrollment in the plan. The plaintiffs alleged that the defendants misrepresented that the ERISA plan provided maternity and pregnancy coverage. In that case, the court held that ERISA preempted the plaintiffs' state law claims because:

> The [plaintiffs'] complaint allege[d] that [the agent] negligently failed to disclose that the [ERISA] plan did not provide maternity and pregnancy coverage and fraudulently misrepresented that the [ERISA] plan's coverage was coextensive

with [the plaintiffs'] former plan's coverage. [T]he conduct alleged in these claims is not only contemporaneous with [the ERISA plan's] refusal to pay benefits, but the alleged conduct is intertwined with the refusal to pay benefits. Finding the [plaintiffs'] state law claims not wholly remote in content from the [ERISA] plan, we reject the [plaintiffs'] contention that simply because their claims involve misconduct in the sale and implementation of the [ERISA] plan, their claims do not relate to the plan. Consequently, we hold that ERISA preempts the [plaintiffs'] misrepresentation and negligence claims.

*Id.* at 794. Incident to this ruling on ERISA preemption, the court the court upheld the district court's striking of the plaintiffs' demand for a jury trial. *Id.*

However, in *Perry v. P*I*E Nationwide, Inc.*, 872 F.2d 157 (6th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1166, 107 L.Ed.2d 1068 (1990), the Sixth Circuit held that a similar cause of action was not preempted by ERISA. In *Perry*, the plaintiffs sued their employer for rescission of an ERISA employee stock ownership plan they had entered into, along with restitution. The plaintiffs alleged "that their participation [in the plan] was obtained through fraud, coercion, misrepresentation, promissory estoppel, lack of consideration, and breach of fiduciary duty." *Id.* at 158. Particularly, the plaintiffs claimed that the defendant, their employer, had misrepresented that the company would not be sold, thereby inducing them to participate in the stock option plan and take an "irrevocable" wage reduction in the process. The district court held that " '[p]reemption by ERISA only applies once the benefit plan is in existence, and does not apply to alleged common law actions of fraud or misrepresentation' to get the plaintiffs to join the plan.' " *Id.* at 159. "Because the purported misconduct of [the defendant] occurred before plaintiffs became participants or beneficiaries, and because they were not suing for benefits under the plan, the district court held that preemption did not apply." *Id.* at 160. In affirming that ERISA did not preempt the plaintiffs' com-

mon law causes of action for fraud, misrepresentation and promissory estoppel, the Sixth Circuit followed the reasoning set forth in *Dependahl v. Falstaff Brewing Corp.*, 653 F.2d 1208 (8th Cir.), *cert. denied*, 454 U.S. 968, 102 S.Ct. 512, 70 L.Ed.2d 384 (1981). In *Dependahl*, the Eighth Circuit held:

> [P]reemption of state common law claims, such as tortious interference, applies, when (1) Congress has indicated an intent to "occupy the field," and (2) Congress has provided a remedy for the alleged wrong.

872 F.2d at 162. (citing *Dependahl*, 653 F.2d 1215)[1]. The Sixth Circuit focused upon the second part of the *Dependahl* test requiring a remedy to be provided before preemption will be found.

> Resolution of the second of these *Dependahl* standards depends upon an interpretation of 29 U.S.C. § 1132, the ERISA civil enforcement provision. Section 1132(a)(3) provides that a civil action may be brought by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

*Id.* at 162. In holding that ERISA did not preempt certain of the plaintiffs' state law causes of action, the court stated:

> Here, plaintiffs seek a rescission of the plan and restitution of the agreed wage reduction. Neither party has cited any

case indicating that § 1132 provides a remedy of the type sought by the plaintiffs. Plaintiffs, unlike the complainants in some of the cases cited or discussed above, do not seek plan benefits or an increase in plan benefits; rather, they seek not to be bound as participants and thus to recoup their wage reductions.

*Id.* at 162.

In an earlier case, later affirmed by the Sixth Circuit, this Court addressed a similar ERISA preemption issue. *Coleman v. General Elec. Co.*, No. CIV–1–84–534, slip op. (E.D.Tenn. Jan. 27, 1986).[2] In *Coleman*, employees of a 3M plant which was purchased by General Electric Ceramics ("GE"), filed suit against 3M and GE alleging breach of contract, misrepresentation and violations of ERISA relating to promises as to the nature of the benefits to be offered by GE under its ERISA plan and how it compared to the 3M plan. This Court, in its unpublished memorandum, first addressed whether the plaintiffs' state law causes of action were preempted by ERISA. The plaintiffs argued that preemption could only be found when (1) Congress has indicated its intention to "occupy the field" in the subject area, and (2) Congress has provided a remedy for the wrong alleged, citing *Ogden v. Michigan Bell Telephone Co.*, 571 F.Supp. 520, 523 (E.D. Mich.1983). *See Perry v. P\*I\*E Nationwide, Inc.*, 872 F.2d 157, 162 (6th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1166, 107 L.Ed.2d 1068 (1990).

---

1. *But cf.* H.R.Rep. No. 801, 100th Cong., 2d Sess. Pt. 2, at 63 (1988) (Congress intended federal courts to fashion a federal common law with respect to employee benefit plans, including legal and equitable remedies not specifically mentioned in ERISA.); *Provident Life & Accident Ins. Co. v. Waller*, 906 F.2d 985, 990 (4th Cir.1990). *But see Lee v. E.I. DuPont de Nemours & Co.*, 894 F.2d 755, 757 (5th Cir.1990); *Lister v. Stark*, 890 F.2d 941, 946 (7th Cir.1989), *petition for cert. filed* (Feb. 26, 1990) (Availability of a federal remedy is *not* a prerequisite for federal preemption.) *See generally, Airco Industrial Gases, Inc. Div. of the Boc Group, Inc. v. Teamsters Health and Welfare Pension Fund of Philadelphia and Vicinity*, 850 F.2d 1028, 1027–29 (3d Cir.1988). (Distinction between whether district court has subject matter jurisdiction and

whether plaintiff has a valid cause of action under federal common law); *Whitworth Bros. Storage Co. v. Central States, Southeast and Southwest Areas Pension Fund*, 794 F.2d 221, 227 n. 7 (6th Cir.1986) (6th Cir.1986), *cert. denied*, 479 U.S. 1007, 107 S.Ct. 645, 93 L.Ed.2d 701 (1986). ("[T]he standing question is certainly analytically distinct from the questions of failure to state a claim and lack of jurisdiction.").

2. This Court issued both an unpublished and a published opinion in this case. *See Coleman v. General Elec. Co.*, No. CIV–1–84–534, slip op. (E.D.Tenn. Jan. 27, 1986); *Coleman v. General Elec. Co.*, 643 F.Supp. 1229 (E.D.Tenn.1986), *aff'd*, 822 F.2d 59 (6th Cir.1987).

In finding that the plaintiffs' state causes of action were nonetheless preempted by ERISA, this Court held:

> In the present suit, plaintiffs claim breach of contract and misrepresentation relating to promises for severance pay and the nature of the benefits to be offered by [General Electric]. These matters clearly "relate to" items covered by an ERISA-covered plan. This Court rejects the plaintiffs' argument that Congress did not intend a broad preemptive effect. The Court also disagrees with the plaintiff[s'] analysis that the courts have intended to keep available a wide array of state causes of actions that are not subject to preemption. Finally, ERISA provides an all-encompassing remedy for breach of duties related to ERISA-covered plans and applicable to the plaintiff[s'] situation depending, of course, on the particular facts developed. *See Ogden,* 571 F.Supp. at 523; 29 U.S.C. § 1109(a). Nonetheless, the plaintiffs must make out their cause of action—concern over a remedy is premature until a right is established. ERISA does, though, provide a "full range of legal and equitable remedies [citation omitted]." *Ginsberg,* 757 F.2d at 802.

*Coleman v. General Elec. Co.,* No. CIV-1-84-534, slip op. at 6-7 (E.D. Tenn. Jan. 27, 1986).

The plaintiffs in *Coleman* did assert ERISA claims: (1) that the defendants, GE and 3M, "violated their fiduciary obligations to plaintiffs not to misrepresent the various benefits, or to omit to make statements necessary for the statements made not to misrepresentations," and (2) that the failure to provide equivalent benefits "constitute[d] a breach of contract under the provisions of ERISA...." 643 F.Supp. at 1234 n. 2. This Court held in that published opinion that the plaintiffs had no viable ERISA claim against GE. In reaching this conclusion, the Court reasoned that since the plaintiffs were not under the ERISA plan sponsored by GE at the time the alleged misrepresentations were made, GE did not owe the plaintiffs any fiduciary duty. 643 F.Supp. at 1235. "A fiduciary relationship does not exist towards potential participants in a plan and such potential participants have no standing to sue for misrepresentation and breach of fiduciary duty under ERISA. *See generally, Saladino v. I.L.G.W.U. National Retirement Fund,* 754 F.2d 473, 476 (2nd Cir.1985); *see also Kuntz v. Reese,* 785 F.2d 1410, 1411-12 (9th Cir.1986)." 643 F.Supp. at 1235. "A fiduciary under ERISA is one who exercises discretionary authority or control respecting management of an ERISA plan or one who gives investment advice for compensation or who has discretionary authority in the administration of such a plan. 29 U.S.C. § 1002(21)(A). Needless to say, these duties can only run to people who are beneficiaries pursuant to the statute." 643 F.Supp. at 1236 n. 4. However, this Court, perhaps foreshadowing the Sixth Circuit's later decision in *Perry,* said in a footnote that "the Court believes that fundamentally it makes sense not to permit preemption to operate in a vacuum, preempting common law claims but providing no alternative federal action—at least to the extent that the retention of the common law actions do not impede the operation or application of the federal scheme." 643 F.Supp. at 1236 n. 5. (citing *Kuntz v. Reese* which "implicitly recognized that common law claims are not preempted when ERISA, by its own terms, is not applicable [and dismissed without prejudice the plaintiff's state law claims].")

This Court is, therefore, left in a quandary. On the one hand, the Eleventh Circuit, from whence this case arrived, has clearly and explicitly ruled that the plaintiffs' state law causes of action are preempted by ERISA. *See Farlow v. Union Central Life Ins. Co.,* 874 F.2d 791 (11th Cir.1989). On the other hand, the Sixth Circuit, where the case is presently pending, has set forth what appear to be conflicting opinions. In *Coleman,* this Court found the plaintiffs' state law causes of action to be preempted by ERISA, and then ruled that the plaintiffs had no remedy under ERISA against the defendant since the plaintiffs were not participants under the plan when the alleged wrongful actions were taken. This ruling was affirmed by the Sixth Circuit,

which adopted this Court's opinion. However, in *Perry*, the Sixth Circuit thereafter ruled that courts should consider whether a remedy under ERISA exists before ruling that state law causes of action are preempted by ERISA.

■ This Court must, therefore, decide which law to apply: Eleventh or Sixth Circuit. In *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), the Supreme Court held that in a diversity case a federal court is required to apply the state's law in which it sits. In *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), the Supreme Court held that this rule applied to a state's choice of law rules. In *Van Dusen v. Barrack*, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964), the Supreme Court held that the law of the state in which the transferor court sat would continue to apply after a section 1404(a) transfer of a diversity case to a district court sitting in another state. The question left unanswered by the Supreme Court is whether, under *Van Dusen*, the transferee court is to apply the interpretation of a federal claim by the circuit in which the case was filed or of the circuit to which it was transferred.

To answer this question, one must look to the principles behind the Supreme Court's prior decisions relating to transfer under section 1404(a). First, *Erie* simply does not apply to federal claims. Instead, it is limited to issues of state law. The Court there expressly excluded "matters governed by the Federal Constitution or by Acts of Congress" from its ruling that federal courts are bound by state law in other matters. 304 U.S. at 78, 58 S.Ct. at 822. Second, *Erie* guards the integrity of state policy. As the Court noted in *Erie*, it would be unfair to discriminate between those who can gain admission to federal court on the basis of diversity and those who are confined to state court by the fortuity of their residence. Instead, federal courts should seek to ensure that the result would be the same in either court, thereby protecting the integrity of state policy. As concluded in *Van Dusen*, these

concerns would be threatened if courts interpreted section 1404(a) to allow defendants "a change of law as a bonus for a change of venue" in transferred diversity cases. 376 U.S. at 636 n. 33, 84 S.Ct. at 819 n. 33. This would violate the principle of *Erie* of not distinguishing between litigants on the basis of residence.

These principles, however, do not apply to transferred cases involving federal claims. While as a practical matter circuit conflicts do exist, in theory, at least there is supposed to be only one proper interpretation of federal law. State policy considerations are not involved. Therefore, while the law of the transferor forum on federal issues merits close consideration, it is not binding upon the transferee forum. Instead, each circuit must engage in independent analysis of the issue, and it is only that circuit's decisions, along with the Supreme Court, which bind the district courts in that circuit. *See In re Korean Air Lines Disaster of Sept. 1, 1983*, 829 F.2d 1171 (D.C.Cir.1987); Marcus, *Conflicts Among Circuits and Transfers Within the Federal Judicial System*, 43 Yale L.J. 677 (1984).

■ The plaintiffs in this case are seeking what amounts to a monetary award that would cover damages sustained from reliance upon the defendants' misrepresentations as to the coverage provided by the ERISA plan, including an award for punitive damages. This remedy clearly "relates to" the ERISA plan at issue. It not only requires the Court to determine what coverage is available under the plan, but also whether the fiduciary acted properly in denying coverage. However, the plaintiffs' cause of action is that the fiduciary, and its alleged agents, engaged in fraud and misrepresentation prior to the plaintiffs being participants under the plan. *Coleman*, 643 F.Supp. at 1235. They would not have a right of action against the defendants under ERISA since the defendants/fiduciary owed them no duty until they had enrolled in the plan. Therefore, since Congress has not provided a remedy for the alleged wrong, this Court is constrained to follow the law in this circuit

as embodied in the holding of the *Perry* case, and conclude that the plaintiffs' state claim for fraudulent misrepresentation is not preempted by ERISA.[3]

An order will enter.

## ORDER

For the reasons set forth in the accompanying memorandum, the motions to dismiss filed by defendants Life Investors Insurance Company of America and Nicholas W. Humble are hereby GRANTED IN PART and DENIED IN PART. The motions are GRANTED with respect to count four of the plaintiff's complaint, which is hereby DISMISSED WITH PREJUDICE. The motions are DENIED in all other respects.

---

**3.** This Court notes that the correctness of the Sixth Circuit's decision in *Perry* is a matter which could be the subject of legitimate debate. By adding the requirement that there be no preemption of a state cause of action unless Congress has provided a remedy for the alleged wrong, the Sixth Circuit may have added an ingredient to the preemption issue that is nowhere mentioned by the Supreme Court in its most recent ERISA preemption cases, *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), and *Metropolitan Life Insurance Company v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987).